IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALLEN MITCHELL, | ) | CASE NO. 5:12-cv-01288 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION,[1] | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Allen Mitchell ("Plaintiff" or "Mitchell") seeks judicial review of the final

decision of Defendant Commissioner of Social Security ("Commissioner") denying his

applications for social security disability benefits.  Doc. 1.  This Court has jurisdiction pursuant

to 42 U.S.C. § 405(g).  This matter has been referred to the undersigned Magistrate Judge for a

Report and Recommendation pursuant to Local Rule 72.2(b)(1).

For the reasons stated below, the undersigned recommends that the Commissioner's

decision be **AFFIRMED**.

## I.  Procedural History

Mitchell filed applications for Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI) on December 1, 2009, alleging a disability onset date of May 1, 2009.

Tr. 125-131, 132-141, 149.  He alleged disability based on emphysema and chronic obstructive

pulmonary disease (COPD).  Tr. 67, 70, 86, 90, 154.  After initial denial by the state agency (Tr.

67-69, 70-72), and denial upon reconsideration (Tr. 86-91, 92-98), Mitchell requested a hearing

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013.  Pursuant to FED. R.
CIV. P. 25(d), she is hereby substituted for Michael J. Astrue as the Defendant in this case.

(Tr. 99-101).  On November 19, 2010, an administrative hearing was held before Administrative Law Judge Dwight D. Wilkerson ("ALJ").  Tr. 25-62.

In his December 3, 2010, decision, the ALJ determined that Mitchell had not been under a disability from May 1, 2009, the alleged disability onset date, through the date of the ALJ's decision.  Tr. 10-20.  Mitchell requested review of the ALJ's decision by the Appeals Council. Tr. 9.  On March 29, 2012, the Appeals Council denied Mitchell's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-5.

## II. Evidence

### A.    Personal and Vocational Evidence

Mitchell was born on October 9, 1961.  Tr. 125, 132, 149.  He is married and, at the time of the hearing, resided with his wife and seventeen year old son.  Tr. 34-35.

He completed the ninth grade.  Tr. 31, 158.  He was not in special education classes.  Tr. 31, 158.  He left school before graduating because his father needed help with his construction business.  Tr. 31.

Mitchell last worked on or about April 1, 2009.  Tr. 154.  He stopped working because he was unable to breathe when exerting himself.  Tr. 31, 154.  His past work consisted of laborer and/or construction jobs.  Tr. 33-34, 155.  Some of his past work involved supervisory responsibilities.  Tr. 51, 155.

### B.    Medical Evidence

#### 1.    Treatment Records

On July 8, 2008, Mitchell sought emergency room treatment at Pomerene Hospital for shortness of breath over the prior three days.  Tr. 243.  He reported using a Proventil inhaler for his shortness of breath but indicated that his inhaler had run out.  Tr. 243.  En route to the

2

hospital, the paramedics administered a Proventil treatment because Mitchell had some wheezing.  Tr. 243.  At the hospital, no further respiratory treatments were necessary.  Tr. 243. He was diagnosed with acute asthmatic bronchitis, alcohol intoxication,[2] and acute chest wall pain.  Tr. 243.  When discharged, Mitchell was feeling better and the emergency room physician informed Mitchell that his chest pain was most likely due to chest wall pain and that his shortness of breath was due to asthmatic bronchitis.  Tr. 243.  A July 8, 2008, x-ray showed no active pulmonary disease.  Tr. 244.

On March 12, 2009, Mitchell again sought emergency room treatment at Pomerene Hospital and complained of shortness of breath for the prior two weeks.  Tr. 233.  He requested an inhaler.  Tr. 237.  Mitchell reported that his shortness of breath was worse at night.  Tr. 233. He was smoking two packs of cigarettes per day and had been doing so for the past 30 years.  Tr. 233.  He was drinking over 6 beers per day.  Tr. 237.  He reported fevers, chills and vomiting in the morning.  Tr. 237.  The emergency room physician ordered a breathing treatment.  Tr. 237. However, Mitchell left the hospital before receiving the treatment.  Tr. 237.

On April 9, 2009, Mitchell sought treatment at Holmes County Health District Community Clinic.  Tr. 241.  He complained of shortness of breath for the prior two months.  Tr. 241.  He complained that his shortness of breath was worse when the weather changed.  Tr. 241. He was still smoking 2 packs of cigarettes per day and drinking a 6 pack of beer each day.  Tr. 241.  His physician diagnosed COPD and counseled Mitchell on smoking cessation.  Tr. 241. His physician also counseled him on cutting down on his drinking and noted that his physicians would watch his hypertension.  Tr. 241.

---

[2] On admission, Mitchell reported drinking 6 shots of whiskey and 6 beers.  Tr. 243.

On October 29, 2009, Mitchell again sought treatment at Holmes County Health District Community Clinic.  Tr. 240.  He complained of more shortness of breath.  Tr. 240.  He reported using his "puffer 6 times - 4 puffs at a time and [nebulizer] machine once in A.M.."  Tr. 240. Regarding Mitchell's COPD, his physician indicated that Mitchell did not seem to be responding to steroid treatment.  Tr. 240.  His physician counseled him again on quitting smoking.  Tr. 240.

The following year, on June 25, 2010, Mitchell sought treatment at Holmes County Health District Community Clinic.  Tr. 293.  He complained of chest pain and difficulty breathing.  Tr. 293.  He reported that he had to stop after walking about 10 feet.  Tr. 293.  He was counseled again about his smoking.  Tr. 293.  A stress test and CT chest scan were ordered.  Tr. 293.

As a result of the July 15, 2010, CT chest scan, a thyroid ultrasound was suggested.  Tr. 293.  The CT chest scan showed no acute intrathoracic diseases.  Tr. 296.  During his July 15, 2010, stress test, Mitchell had significant shortness of breath while walking 1 mile per hour.  Tr. 306.  However, the stress test was "normal."  Tr. 306.  Additionally, at the end of recovery time, Mitchell was feeling comfortable and had no dyspnea or chest pain.  Tr. 306.   On July 21, 2010, Mitchell inquired about the results of his stress test and was informed that his stress test was normal.  Tr. 320.  Mitchell then asked what else he could do.  Tr. 320.  He was advised to "stop smoking!!"  Tr. 320.  Also, he was told that, based on the CT chest scan, a thyroid ultrasound could be scheduled.  Tr. 320.   On September 7, 2010, Mitchell ultimately had part of his thyroid removed.  Tr. 42, 313.  Following that procedure, Mitchell indicated that "it healed up pretty good" and he was not experiencing any continuing problems.  Tr. 42.

### 2.    Medical Opinions

#### a.    Consultative Examining Physician

On February 23, 2010, Yolanda Duncan, M.D., conducted a consultative examination of Mitchell.  Tr. 256-258.  Following her examination, she assessed Mitchell as having COPD, GERD, and hypertension.  Tr. 258.  She opined that Mitchell "should not have any difficulty with work related physical activities such as sitting.  He may have difficulty standing more than 30 minutes, walking more than 100 feet, or climbing more than 1 flight of stairs."  Tr. 258.   Dr. Duncan also had Mitchell undergo a pulmonary function study.  Tr. 259-262.  She concluded that Mitchell understood the test but gave a suboptimal effort.  Tr. 262.  She also concluded that the test showed severe airway obstruction.  Tr. 262.

### b.    State Agency Reviewing Physicians

On March 31, 2010, Eli Perencevich, D.O., completed a Physical Residual Functional Capacity ("RFC") Assessment.  Tr. 274-281.  He opined that Mitchell retains the ability to: lift/carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk about 6 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday.  Tr. 275.  He also opined that, other than lifting/carrying limitations, Mitchell has no limitations in his ability to push/pull; no postural limitations; no manipulative limitations; no visual or communicative limitations; and no environmental limitations.  Tr. 275-278.   Dr. Perencevich concluded that Mitchell's report of his symptoms was only partially credible because he found that Mitchell's complaints of chest pain and stomach pain were excessive as compared to the medical record of evidence.  Tr. 279.

On August 16, 2010, Walter Holbrook, M.D., reviewed Dr. Perencevich's RFC.  Tr. 298. In connection with that review, Dr. Holbrook reviewed the July 15, 2010, CT chest scan and stress test results.  Tr. 298. He also considered Mitchell's reports that his breathing had worsened; that he had had a severe cough over the prior month and a half; and that he needed to

use his inhalers more frequently.  Tr. 298.  Dr. Holbrook affirmed Dr. Perencevich's March 31, 2010, RFC as written.  Tr. 298.

## C.    Testimonial Evidence

### 1.    Mitchell's Hearing Testimony

With counsel present, Mitchell testified at the hearing.  Tr.  31-44, 51-52.  On a typical day, Mitchell wakes at about 5:00 a.m., fixes some iced tea, listens to the radio, makes his wife a pot of coffee, and waits for her to wake up at 6:00 a.m.  Tr. 35-37.  After his wife leaves for work, he watches movies.  Tr. 37.  During the day, he prepares dinner for his family.  Tr. 37-38.  After his wife returns from work, they eat supper and go to bed around 6:30 or 7:00 p.m.  Tr. 38.

Mitchell has difficulty sleeping.  Tr. 38.  He can sleep only for about an hour at a time. Tr. 38.  He gets short winded and cannot sleep lying down.  Tr.  38-39.   Notwithstanding his inability to sleep for extended periods at night, he generally does not nap during the day.  Tr. 43. He has difficulty showering; the humidity from a shower makes his breathing worse.  Tr. 36.

Mitchell's primary difficulty with working is that, sometimes during the day, he experiences a breathing attack, i.e., shortness of breath of such a degree that his inhaler does not help and he needs to use his nebulizer machine.[3]  Tr. 39-40.  During such an occurrence, he would have to leave immediately to get his nebulizer machine.  Tr. 39.  The nebulizer breathing treatment takes about 15 minutes and, about half-way through the treatment, his breathing starts to improve.  Tr. 39.   At first, Mitchell stated that he needs to use the nebulizer machine at least once each week.  Tr. 39.  Later, he testified that he uses the nebulizer machine four times each day and sometimes more often.  Tr. 43-44.  Walking aggravates his breathing condition.  Tr. 40. He can walk about 100 feet or for a couple of minutes before needing to take a break.  Tr. 40.

---

[3] Mitchell mentioned having some joint pain in his knees and elbows.  Tr. 41.  However, on appeal, Mitchell has not challenged the ALJ's findings relative to his alleged joint pain.

Before he can walk again, he needs a break of "[p]robably a couple, three minutes or so."  Tr. 40-41.  Mitchell can lift 20-25 pounds once or twice but not constantly.  Tr. 41-42.  He is on medication for his breathing and he takes a stomach pill, thyroid medicine and blood pressure medicine.  Tr. 42.  He does not experience any side-effects from his medications.  Tr. 42-43.

### 2.    Medical Expert's Testimony

At the ALJ's request, Dr. Donald W. Junglas, M.D., appeared at the hearing and testified as a medical expert.[4]  Tr. 44-49, 119-121.  Having reviewed the medical evidence in Mitchell's case, Dr. Junglas opined that Mitchell has medically determinable impairments that have lasted for at least 12 months:  "chronic obstructive pulmonary disease, an episodic shortness of breath, secondary to bronchial constriction, which is like an asthma type."  Tr.  45-46.   Dr. Junglas noted that Mitchell is required to use inhalers and a pulmonary function test revealed diminished pulmonary function.  Tr. 46.  He opined that Mitchell's impairments do not meet or equal a Listing.[5]  Tr. 46.  Dr. Junglas opined that Mitchell would have the following limitations: he should be able to lift/carry at least 20 pounds;[6] he should be able to walk 100 feet and does not require a cane for ambulation; he should be able to sit for 6 to 8 hours; he should be able to stand for 1 to 2 hours; he should be able to reach, handle, feel, finger, and push and pull as long as not over 20 pounds; he should be able to operate foot controls; he cannot climb stairs, ramps, ladders

---

[4] Dr. Junglas is board certified and has practiced internal medicine for 42 years.  Tr. 44-45, 121.

[5] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.  20 C.F.R. § 404.1525.  Mitchell did not argue that his condition met or equals a Listing.  Tr.  30 (stating, during opening statement, that it was not Plaintiff's position that his condition met a Listing).

[6] Dr. Junglas indicated that Mitchell's muscle strength was normal and he had good strength in his extremities.  Tr. 46.

or scaffolds; he can balance, stoop, kneel, crouch, and crawl; his hearing and vision are normal; and he should not be in an extremely humid environment.  Tr. 46-47.

Dr. Junglas confirmed that a nebulizer is a standard form of treatment for Mitchell's condition.  Tr. 48.  He opined that, based on the evidence, it would be necessary to use a nebulizer every three to four hours during an eight-hour workday and that a nebulizer treatment takes about 15 minutes.  Tr. 48-49.

### 3.      Vocational Expert's Testimony

Vocational Expert Lynn Kaufman ("VE") testified at the hearing.  Tr. 49-60.  The VE described Mitchell's past work experience.  Tr. 52-53.  He worked as a contractor which is a light, skilled position; he worked as a construction worker which is a heavy, semi-skilled position; and he worked as a construction labor supervisor which is a light, skilled position.[7]  Tr. 52-53.

The ALJ asked the VE to assume a hypothetical individual with Mitchell's education, past work and age who is limited to light work except cannot walk for more than 100 feet or for more than two minutes without needing to take a two minute break before proceeding to walk; must avoid even moderate exposure to fumes, dust, gases, poor ventilation, chemicals, or other pulmonary irritants, including extreme cold, heat, or humidity; cannot climb stairs at all, or ladders, ropes, or scaffolds; and would require two to three 15-minute breaks in an eight-hour day.  Tr. 53-54.  Based on the ALJ's hypothetical, the VE opined that such an individual would be unable to perform Mitchell's past work.  Tr. 54.  With the added limitation of being able to stand and walk for a total of two hours in an eight-hour day, including the limitation of being able to walk only 100 feet or for one or two minutes, the VE opined that there would be other

---

[7] The VE also indicated that Mitchell was a working manager and contractor, i.e., he was hands on so he performed his work at the very heavy exertional level.  Tr.  53.

jobs that such an individual could perform.  Tr. 54-55.  Because of the limited distance and/or time that the individual would be able to walk, the VE indicated that she was primarily looking at sedentary positions.  Tr. 54-55.

The ALJ clarified that the individual would need to be able to take his breaks as needed, approximately once every three to four hours, which the ALJ translated into two to three times each day.  Tr. 55.  The VE stated that the flexibility in the timing of when breaks are taken may restrict availability of work.  Tr. 55-56.  The VE also indicated that most employers do allow three breaks and there are some employers who allow for flexibility in the timing of breaks.  Tr. 55-56, 58.  Thus, she opined that there would be work available for such an individual.  Tr. 55-56, 58.  She listed the following jobs: (1) sedentary unskilled clerical jobs with there being approximately 2,000 statewide and 52,000 nationwide; (2)  sedentary packing (banders) jobs with there being approximately 3,000 statewide and 7,800 nationwide; and (3) sedentary table assembler jobs with there being approximately 2,400 statewide and 65,000 nationwide.  Tr. 56-57.   The VE also estimated that 20% of the unskilled sedentary base would be available to the hypothetical individual as described by the ALJ.  Tr. 57.  The VE translated that percentage to equate to approximately 9,000 jobs statewide and 234,000 nationwide.  Tr. 57-58.  In response to Mitchell's counsel's questions regarding the need for breaks, the VE indicated that going beyond the norm of three breaks per day may impact an employee's productivity and therefore require an accommodation.  Tr. 59-60.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or
> mental impairment or impairments are of such severity that he is not only unable
> to do his previous work but cannot, considering his age, education, and work
> experience, engage in any other kind of substantial gainful work which exists in
> the national economy . . . .

42 U.S.C. § 423(d)(2).

  In making a determination as to disability under this definition, an ALJ is required to

follow a five-step sequential analysis set out in agency regulations.  The five steps can be

summarized as follows:

> 1.  If the claimant is doing substantial gainful activity, he is not disabled.
>
> 2.  If claimant is not doing substantial gainful activity, his impairment must
>     be severe before he can be found to be disabled.
>
> 3.  If claimant is not doing substantial gainful activity, is suffering from a
>     severe impairment that has lasted or is expected to last for a continuous
>     period of at least twelve months, and his impairment meets or equals a
>     listed impairment, claimant is presumed disabled without further inquiry.
>
> 4.  If the impairment does not meet or equal a listed impairment, the ALJ
>     must assess the claimant's residual functional capacity and use it to
>     determine if claimant's impairment prevents him from doing past relevant
>     work.  If claimant's impairment does not prevent him from doing his past
>     relevant work, he is not disabled.
>
> 5.  If claimant is unable to perform past relevant work, he is not disabled if,
>     based on his vocational factors and residual functional capacity, he is
>     capable of performing other work that exists in significant numbers in the
>     national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d

119, 107 S. Ct. 2287 (1987).[8]  Under this sequential analysis, the claimant has the burden of

---

[8] The DIB and SSI regulations cited herein are generally identical.  Accordingly, for convenience, further citations
to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20

proof at Steps One through Four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir.

1997).  The burden shifts to the Commissioner at Step Five to establish whether the claimant has

the Residual Functional Capacity ("RFC") and vocational factors to perform work available in

the national economy.  *Id.*

## IV. The ALJ's Decision

In his December 3, 2010, decision, the ALJ made the following findings:

1.  Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2013.  Tr. 15.

2.  Plaintiff has not engaged in substantial gainful activity since May 1, 2009, the alleged onset date. Tr. 15.

3.  Plaintiff has the following severe impairment: chronic obstructive pulmonary disease (COPD).  Tr. 15-16.

4.  Plaintiff does not have an impairment or combination of impairments that meets or medically equals a Listing. Tr. 16.

5.  Plaintiff has the RFC to perform light work with certain restrictions. Plaintiff is able to stand and/or [sic] for a total of two hours in an eight-hour workday; however he is able to walk for approximately 100 yards or one to two minutes at one time and then requires the ability to rest for two minutes.  He is not able to climb stairs, ladders, ropes, or scaffolds. He must avoid even moderate exposure to fumes, dust, gases, poor ventilation, and other pulmonary pollutants, as well as extreme cold, heat, and humidity.  He requires two to three minute 15-minute breaks during an eight-hour workday, averaging once every two to three hours.  Tr. 16-18.

6.  Plaintiff is unable to perform past relevant work.  Tr. 18-19.

7.  Plaintiff was born on October 9, 1961, and was 47 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date.  Tr. 19.

8.  Plaintiff has a limited education and is able to communicate in English. Tr. 19.

---

C.F.R. § 404.1501 et seq.  The analogous SSI regulations are found at 20 C.F.R. § 416.901 et seq., corresponding to the last two digits of the DIB cite (i.e., 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).

9.    Transferability of job skills is not material to the determination of disability.  Tr. 19.

10.   Considering the Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform, including clerical, addresser; packaging, bagger; and assembler, table worker.  Tr. 19-20.

Based on the foregoing, the ALJ determined that Plaintiff has not been under a disability from May 1, 2009, through the date of the decision.  Tr.  20.

## V. Parties' Arguments

### A.    Plaintiff's Arguments

First, Plaintiff argues that the ALJ's determination that he can perform a range of sedentary work is not supported by substantial evidence.  Doc. 13, pp. 8-12.  Plaintiff asserts that the ALJ erred in his identification of Mitchell's RFC as light rather than sedentary.  Doc. 13, p. 8.  Plaintiff also asserts that the ALJ erred in his determination that Mitchell requires only two minutes of rest after walking approximately 100 yards or one or two minutes at a time.  Doc. 13, pp. 9-10.  Plaintiff argues that this finding was speculative and is not supported by substantial evidence.  Doc. 13, pp. 9-10.  Finally, Plaintiff asserts that the ALJ erred in his determination that Mitchell needs only two to three 15-minute breaks during an eight-hour workday, averaging a break once every two to three hours.  Doc. 13, pp. 10-12.  Plaintiff asserts that, in reaching this finding, the ALJ did not properly assess his credibility.  Doc. 13, pp. 10-12.

Second, Plaintiff asserts that the ALJ posed an inadequate hypothetical question and erroneously relied on portions of the VE's testimony to find Mitchell not disabled at Step Five.  Doc. 13, pp. 12-14.  Plaintiff asserts that the ALJ failed to account for Plaintiff's episodic worsening of  his COPD; his need to use a nebulizer four or more times a day on a regular basis;

12

and his intermittent need to leave the work setting to use his nebulizer on an unscheduled basis. Doc. 13, pp. 12-14.

**B.      Defendant's Arguments**

In response, Defendant argues that the ALJ's decision is supported by substantial evidence (Doc. 14, pp. 6-7); the ALJ properly evaluated the credibility of Plaintiff's subjective complaints (Doc. 14, pp. 7-9); and the ALJ's VE hypothetical contained all of Plaintiff's credibly established limitations (Doc. 14, pp. 9-11).

### VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**A.      The ALJ conducted a proper credibility assessment that is supported by substantial evidence.**

Plaintiff's request for reversal and remand of the Commissioner's decision is based, in part, on his claim that the ALJ did not properly assess his credibility.  Doc. 13, pp. 10-14. However, Plaintiff fails to demonstrate that the ALJ's credibility assessment is not supported by substantial evidence.  Social Security Ruling 96–7p and 20 C.F.R. § 404.1529 describe a two-part process for assessing the credibility of an individual's subjective statements about his or her

symptoms.  First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; then the ALJ must evaluate the intensity and persistence associated with those symptoms to determine how those symptoms limit a claimant's ability to work.   When evaluating the intensity and persistence of a claimant's symptoms, consideration is given to objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529(c); Soc. Sec. Rul. 96–7p, 1996 WL 374186, at 3 (July 2, 1996).  "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.  Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence."  Calvin v. Comm'r of Soc. Sec., 437 F. Appx. 370, 371 (6th Cir. 2011) (citing Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir.1997)).

In assessing Mitchell's credibility consistent with the foregoing regulations, the ALJ considered the evidence and made clear the basis for his decision.  For example, he properly considered that, although advised to stop smoking on more than one occasion, Mitchell continued to smoke two packs of cigarettes each day.  Tr. 17-19, 240, 241, 320.  See Stull v. Comm'r of Soc. Sec., 2011 WL 861901, *2-3 (N.D. Ohio Mar. 9, 2011) (allowing for consideration of a claimant's failure to follow medical advice to stop smoking in a case where

14

"the treatment recommendation is for an impairment that a claimant alleges causes disabling limitations") (citing *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988). The ALJ considered the fact that there was a significant gap in treatment.  Tr. 17.   The ALJ considered the fact that a July 15, 2010, stress test was normal.  Tr. 17, 306.   The ALJ also considered Plaintiff's daily activities, i.e., performing light household chores, cooking, and sitting to watch movies and found those activities to be consistent with the RFC.  Tr. 18.

The ALJ also considered medical opinions, or the lack thereof.  For example, the ALJ considered and relied upon consultative examining physician Dr. Duncan's opinion that Plaintiff would have some difficulty with standing walking and climbing but would not have difficulty with work activity involving sitting.  Tr. 18, 258.  The ALJ also considered and relied upon Dr. Junglas's medical expert testimony.  Tr. 18.  Dr. Junglas's testimony included his opinion that, based on the evidence, a nebulizer would be necessary every three to four hours during an eight-hour workday.  Tr. 18, 48-49.  Finally, the ALJ considered the fact that no treating provider had placed restrictions on Mitchell or his activity level.  Tr. 18.

The foregoing demonstrates that the ALJ sufficiently evaluated Mitchell's credibility and properly concluded that Mitchell's statements concerning the intensity, persistence, and limiting effects of his symptoms could not be fully credited.

Additionally, as to Mitchell's more specific claim that the ALJ did not consider and/or fully credit his statements that he uses a nebulizer four times every day (Doc. 13, pp. 10-12, pp. 13-14), the ALJ considered Mitchell's statements regarding his use of the nebulizer but found that testimony uncorroborated by evidence of record.[9]  Tr. 18.  This conclusion is supported by

---

[9] Mitchell gave inconsistent testimony regarding his use of a nebulizer.  Mitchell testified that he needed to use a nebulizer at least once a week if one of his inhalers did not work.  Tr. 39.  Later, he testified that he uses a nebulizer four times a day and sometimes more.  Tr. 43-44.  The ALJ concluded that Mitchell's testimony that he uses a nebulizer two to three times each day was not corroborated by the evidence in the record.  Tr. 18.  While the ALJ's

the record.  For example, a treatment note reveals evidence contrary to Mitchell's testimony that he uses his nebulizer four times each day.  Tr. 240.  On October 29, 2009, Mitchell reported that he used his "puffer 6 times - 4 puffs at a time and machine *once* in A.M.."  Tr. 240 (emphasis supplied).  Additionally, Mitchell does not identify medical records to corroborate his alleged use of a nebulizer four times each day.

Notwithstanding the foregoing lack of corroboration, the ALJ gave Mitchell the benefit of the doubt and accounted for his need to take breaks throughout the workday in order to use his nebulizer.  Tr. 18.  The RFC provides for two to three 15-minute breaks, averaging once every two to three hours.  Tr. 16.

For the foregoing reasons, the ALJ properly assessed Mitchell's credibility.  The ALJ's decision not to give full credit to Mitchell's statements regarding the frequency with which he uses a nebulizer throughout the day is supported by substantial evidence.  Accordingly, a decision requiring remand and/or reversal is not warranted.

**B.      The ALJ's RFC is supported by substantial evidence and the ALJ relied upon an adequate VE hypothetical when concluding that Plaintiff is not disabled.**

A claimant's RFC is the most that he can do despite his limitations.  20 C.F.R. § 404.1545(a).  The regulations make clear that a claimant's RFC is an issue reserved to the Commissioner and the ALJ assesses a claimant's RFC "based on all of the relevant medical and

---

conclusion regarding Mitchell's testimony about his use of a nebulizer differs slightly from Mitchell's actual testimony, Mitchell does not assert that the difference between the ALJ's conclusion regarding his testimony and his actual testimony is a basis for reversal.  Thus, any claim of error relating to that portion of the ALJ's decision is arguably waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *see also Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 537 n. 5 (7th Cir. 1992) (applying waiver rule because judges need not devote time to "discussion of argument, raised if at all, 'in a very opaque manner.'").  Moreover, error, if any, is harmless because, as found by the ALJ, Mitchell's testimony regarding how often he uses his nebulizer was uncorroborated by evidence of record.  There is no corroboration that Mitchell used a nebulizer two to three times in an eight-hour day nor is there corroboration that he used a nebulizer four times in an eight-hour day.  Additionally, notwithstanding the lack of corroboration, the ALJ gave Plaintiff the benefit of the doubt and accounted for the need to take breaks.

other evidence" of record.  20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), 404.1527; *see also*

*Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 439 (6th Cir. 2010) ("The Social Security

Act instructs that the ALJ – not a physician – ultimately determines a Plaintiff's RFC."); *Poe v.*

*Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157 (6th Cir. 2009) ("an ALJ does not improperly

assume the role of a medical expert by assessing the medical and non-medical evidence before

rendering a residual functional capacity finding").  "Hypothetical questions . . . need only

incorporate those limitations which the ALJ has accepted as credible."  *Parks v. Soc. Sec.*

*Admin.*, 413 Fed. Appx. 856, 865 (6th Cir. 2011) (citing *Casey v. Sec'y of Health & Human*

*Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).  As shown below, the ALJ's RFC is supported by

substantial evidence and the hypothetical properly incorporated those limitations that the ALJ

determined to be credible.

> **1.      The ALJ's RFC limitation regarding Plaintiff's need for two to three 15-minute breaks during an eight-hour workday is supported by substantial evidence.**

Mitchell's first challenge to the RFC relates to the ALJ's inclusion of a limitation

requiring two to three, rather than four, 15-minute breaks in an eight-hour workday.[10]  Doc. 13,

pp. 10-12, 12-14.  To the extent that Mitchell's argument is based on his claim that the ALJ did

not properly assess his credibility, as discussed above, the ALJ did not err in his credibility

determination.[11]  Accordingly, Mitchell's argument in that regard is without merit.

Dr. Junglas opined that, based on the evidence, it would be necessary to use a nebulizer

every three to four hours during an eight-hour workday. Tr. 48-49.  The ALJ gave great weight

to Dr. Junglas's opinion (Tr. 18) and the RFC is consistent with and supported by that opinion.

---

[10]Plaintiff also argues that the ALJ erred by limiting him to light rather than sedentary work.  Doc. 13, p. 8. However, since the VE listed jobs that met the hypothetical and those jobs were all sedentary jobs (Tr. 56-57), the light limitation, even if erroneous, is harmless.

[11] Moreover, although Mitchell claims he uses a nebulizer four times each day, he did not claim that he uses a nebulizer four times within an eight-hour period.

Tr. 18. *See Besaw*, 966 F.2d at 1030 ("Substantial evidence is more than a scintilla of evidence but less thatn a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (quoting *Brainard*, 889 F.2d at 681).

Finally, the ALJ specifically made clear to the VE that the breaks would have to be flexible. Tr. 55. Thus, to the extent that Mitchell claims the ALJ did not account for, or relied upon a VE hypothetical that failed to account for, the fact that Mitchell may need to use his nebulizer on an unscheduled basis, his claim is without merit.

> **2. The ALJ's RFC limitation as to the period of time that Mitchell needs to rest after walking and before he resumes walking is supported by substantial evidence.**

Mitchell contends that the ALJ's finding that he requires only two minutes to rest after walking approximately 100 yards[12] or one or two minutes at a time, is speculative and not supported by substantial evidence. In support of his claim, Mitchell asserts that he testified that, after walking five minutes he would be short of breath and he would have to rest three minutes before he could walk again. Doc. 13, p. 9. However, Mitchell's complete testimony regarding the amount of time that he would need to rest after walking a couple of minutes[13] is that he would need "[p]robably a couple, three minutes or so" to rest before he could resume walking. Tr. 40-41. In light of Mitchell's testimony, the ALJ's finding adequately accounted for Mitchell's need to rest after walking one or two minutes and the ALJ's finding cannot be said to

---

[12] In the ALJ's hypothetical to the VE and in the medical opinions offered by Dr. Junglas and Dr. Duncan the distance that can be walked before the need to rest is noted to be 100 *feet*. In contrast, Finding 5 of the ALJ decision refers to 100 *yards*. This is likely a typographical error. Even if not a typographical error, Plaintiff has not directly challenged the ALJ's reference to yards rather than feet. Thus, any error regarding such reference is waived. *See McPherson*, 125 F.3d at 995–996. Further, because the ALJ also included a length of time that Mitchell can walk before needing to rest, i.e., one or two minutes, even if challenged by Plaintiff, the reference to yards would be harmless error.

[13] Mitchell refers to his testimony wherein he stated he could walk slowly for about five minutes before becoming short of breath. Tr. 40. Mitchell also testified that he would have to stop walking and rest after walking a couple minutes. Tr. 40.

be based on speculation or so inconsistent with Mitchell's testimony that reversal or remand is warranted.

Mitchell also argues that there was no medical opinion that addressed the period of time that he needs to rest before he resumes walking and, therefore, remand is warranted.  Doc. 13, p. 9-10.  However, the ALJ, not a physician, ultimately determines a claimant's RFC.  *See Coldiron*, 391 Fed. Appx. at 439 ("The Social Security Act instructs that the ALJ – not a physician – ultimately determines a Plaintiff's RFC.").  Moreover, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding."  *See Poe*, 342 Fed. Appx. at 157.  Here, Mitchell himself testified about his recovery time and the ALJ had Mitchell's medical records and evidence concerning Mitchell's daily activities.  The lack of medical opinion as to the specific time period Mitchell needs to rest before resuming to walk does not warrant reversal or remand in light of the record available to the ALJ when assessing Mitchell's RFC and because Mitchell has not demonstrated that the ALJ's finding of no disability is not supported by substantial evidence.

> **3.     The ALJ's VE hypothetical was adequate and accurately portrayed the limitations that the ALJ found to be credible.**

Mitchell also argues that the ALJ relied upon and posed an improper hypothetical to the VE.  Doc. 13, pp. 12-14.  He contends that the hypothetical the ALJ relied upon and posed to the VE did not account for the episodic worsening of his COPD; did not account for his need to use a nebulizer four times each day; and did not account for his intermittent need to leave the work setting to use his nebulizer on an unscheduled basis.  Doc. 13, pp. 12-14.  Mitchell's argument lacks merit.  The ALJ incorporated into the hypothetical those limitations that the ALJ found credible.  *See Parks*, 413 Fed. Appx. at 865 (citing *Casey v. Sec'y of Health & Human Servs.*,

987 F.2d 1230, 1235 (6th Cir. 1993)) ("[h]ypothetical questions . . .  need only incorporate those limitations which the ALJ has accepted as credible.").

The VE hypothetical accounted for Mitchell's COPD.  Tr. 16.  The hypothetical included limitations for walking, standing, climbing, exposure to environmental conditions, and the need for breaks to allow for use of a nebulizer.  Tr. 53-56.  Also, as shown above, the ALJ properly accounted for Mitchell's need to use a nebulizer and limited Mitchell to the extent the ALJ determined him to be credible, i.e., that he would need two to three breaks in an eight-hour workday.  Tr. 53-55.  Further, as discussed above, when posing the hypothetical to the VE, the ALJ made clear that the hypothetical individual would need to be able to take his breaks as needed.  Tr. 55.  In responding to the hypothetical, the VE noted that such a limitation would restrict the availability of jobs.   Tr. 55-56.  However, she also indicated that there were jobs available that would allow for flexibility in the timing of the breaks.   Tr. 56-57.   She then proceeded to identify examples, i.e., clerical jobs, packing jobs and table assembler jobs.   Tr. 56-57.

Because the VE hypothetical upon which the ALJ relied adequately accounted for and incorporated the limitations that the ALJ found to be credible and supported by the record, the ALJ's reliance upon the VE testimony in response to that hypothetical was proper and constitutes substantial evidence to support his Step Five determination.

### VII. Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

Dated:   May 30, 2013

_____
Kathleen B. Burke
United States Magistrate Judge

## **<u>OBJECTIONS</u>**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

21